Seth Allen YELLEN,
Petitioner-Appellant,

v.

Thomas I. COOPER, Superintendent,
Shadow Mountain Correctional
Facility, Respondent-Appellee.

No. 84SA352.

Supreme Court of Colorado,
En Banc.

Feb. 10, 1986.

David F. Vela, Colo. State Public Defender, Kenneth M. Plotz, Deputy State Public Defender, Salida, for petitioner-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard Forman, Sol. Gen., Peter J. Stapp, Asst. Atty. Gen., Denver, for respondent-appellee.

KIRSHBAUM, Justice.

The petitioner, Seth Allen Yellen, appeals the Fremont County District Court's denial of his request for habeas corpus relief filed to contest proceedings initiated by the State of Ohio against the petitioner pursuant to the Interstate Agreement on Detainers, §§ 24–60–501 to –507, 10 C.R.S. (1982) (the Agreement).[1] The petitioner asserts that the People failed to establish that he is the fugitive sought by Ohio, that the trial court erred in considering certain doc-

---

1. Because the appeal concerns a petition for habeas corpus, § 13–4–102(e), 6 C.R.S. (1973), provides for a direct appeal to this court.

uments as evidence, and that he was not promptly informed of the filing of the detainer.[2] We affirm.

On August 5, 1982, the petitioner was incarcerated in the Arapahoe County Jail in connection with an information alleging that he had committed an aggravated robbery in Arapahoe County. According to the petitioner, on that date he was "arrested" for an offense of murder allegedly occurring in the State of Ohio.[3]

On October 22, 1982, the petitioner appeared before the Arapahoe County District Court for sentencing as a result of his conviction on the aggravated robbery charge. At that hearing, the petitioner was served with a warrant for his arrest on extradition charges in connection with the alleged Ohio offenses of aggravated murder and attempted murder. The petitioner was advised of certain rights under the extradition act,[4] and the case was continued for review of the extradition matter until November 23, 1982. Prior to that date, the petitioner was sentenced to the custody of the Colorado Department of Corrections. On November 23, 1982, upon motion of the People, the extradition case was dismissed.

On December 17, 1982, the petitioner was in the custody of the Department of Corrections at Canon City, Colorado. On that date, a detainer was filed against the petitioner; the detainer was based on the Ohio charges. Four days later the petitioner was informed of his rights under the Agreement by a judge of the Fremont County District Court. So far as can be ascertained from the record, no further proceedings were conducted on this detainer.

A new set of documents was sent to Colorado by Ohio authorities in March 1984,[5] requesting temporary custody of the petitioner under the Agreement for the 1981 Ohio indictments. In addition, a warrant for the extradition of the petitioner to Ohio to face such charge was issued by the Governor of Colorado on March 7, 1984. The petitioner subsequently filed a petition for writ of habeas corpus challenging the request for temporary custody. At the conclusion of an evidentiary hearing on June 14, 1984,[6] the trial court denied the petitioner's request for relief.

The petitioner first asserts that the People failed to establish that he is the fugitive sought by the State of Ohio. We disagree.

2. We permitted the petitioner to file a supplemental propria persona brief on appeal. The petitioner raises three arguments, two of which were also raised in his attorney's opening brief and addressed in this opinion. The petitioner's third argument contests the trial court's finding with respect to a photograph of the petitioner taken by the Colorado Department of Corrections. Because the trial court did not rely on the photograph in ruling that the petitioner was the fugitive sought by Ohio, we do not address this issue.

3. The only direct evidence in the record regarding the August 5, 1982, date is the petitioner's testimony. However, the record also reveals that at a hearing on October 22, 1982, the Arapahoe County District Court served the petitioner with a warrant for his arrest on the Ohio charges.

4. It is not clear from the record whether the "extradition act" refers to the Interstate Agreement on Detainers. The petitioner was only advised of his rights to contest extradition, not of his right to speedy disposition of the underlying charges.

5. A subsequent detainer proceeding, 83CR45, was filed against the petitioner in 1983. The record on appeal does not include any documents relating to 83CR45, except a transcript of the petitioner's advisement and a transcript of the beginning of a May 23, 1983, hearing which was continued because the petitioner at that time was in Michigan for the disposition of an unrelated case.

6. The trial court referred to the June 14, 1984, hearing as a "Moen v. Wilson hearing." In Moen v. Wilson, 189 Colo. 85, 536 P.2d 1129 (1975), we held that a prisoner subject to transfer pursuant to the Agreement had the right

(1) to contest his presence in the receiving state at the time the alleged crime was committed, (2) to question whether he is a fugitive from justice or whether the detainer documents are supported by either an indictment or an information supported by an affidavit establishing probable cause, and (3) to determine whether he is substantially charged with a crime under the laws of the receiving state. 189 Colo. at 91, 536 P.2d at 1133.

In extradition proceedings, the People bear the initial burden of establishing a prima facie case of identity. *Council v. MacFarlane*, 709 P.2d 947 (Colo.1985); *Moore v. Simonet*, 696 P.2d 823 (Colo. 1985). Once a prima facie case of identity has been established, the burden shifts to the accused to demonstrate by clear and convincing evidence that he or she is not the fugitive described in the extradition documents. *Light v. Cronin*, 621 P.2d 309 (Colo.1980).[7] The petitioner argues that because the indictments from Ohio referred only to "Road Dog, RNU"[8] and he testified that he had never been known as "Road Dog,"[9] the People failed to establish that he was the fugitive sought by Ohio.

The indictments issued by the Ohio grand jury were only two of several documents presented to the trial court at the hearing. Among those documents were a formal request for temporary custody, a formal request for interstate rendition, and a governor's warrant executed in connection with earlier extradition proceedings. All three of those documents referred to "Seth Allen Yellen aka 'Road Dog.'" The mere fact that the indictments did not name "Seth Allen Yellen" is not sufficient alone to defeat the People's case of prima facie identity. We recently held in *Hodges v. Barry*, 701 P.2d 1240 (Colo.1985), a case arising in the context of extradition proceedings, that a prima facie case of identity is established by identity in the name of the accused in the Colorado governor's warrant, the requisition documents and the fugitive complaint. *Accord Moore v. Simonet*, 696 P.2d 823 (Colo.1985). *Hodges* also held that the defendant's adoption of an alias that is included in one or more of the extradition documents does not of itself defeat a prima facie showing of identification. We find no basis to conclude that in cases arising under the Agreement a trial court may not examine evidence other than the indictment in determining identity.

Here, the indictments charged "Road Dog" with the Ohio crime of aggravated murder and attempted murder. Accompanying the indictments were three other extradition documents naming "Seth Allen Yellen aka 'Road Dog,'" and the Colorado governor's warrant named "Seth Allen Yellen aka 'Road Dog'"; moreover, the petitioner acknowledges that his name is "Seth Allen Yellen." In view of this evidence, we agree with the trial court that the People established a prima facie case that the petitioner is the person charged in the Ohio indictments.[10] *See, e.g., Light v. Cronin*, 621 P.2d 309; *Samples v. Cronin*, 189 Colo. 40, 536 P.2d 306 (1975).

The petitioner asserts, with no citation of supporting authority, that the trial court improperly considered documents other than the Ohio indictments in determining the issue of identity. The evidentiary hearing conducted pursuant to the habeas corpus petition filed by the petitioner is governed by rules of civil procedure. *See Rodriguez v. Sandoval*, 680 P.2d 1278 (Colo.1984). Nothing in the Agreement indicates any legislative intent to restrict the type or amount of evidence which might be offered during such proceedings. The trial court properly considered all of the evidence before it in determining that the People had established a prima facie case of identity, and the record supports the trial court's conclusion that the petitioner failed to establish by clear and convincing evidence that he was not that fugitive.

The petitioner also contends that the trial court erred in refusing to determine whether the timely advice provisions

---

7. Both parties have assumed that the allocation of burden of proof on the issue of identity was governed by decisions of this court discussing the burdens of proof in extradition proceedings.

8. "RNU" means real name unknown.

9. The petitioner's testimony was the only evidence on this issue.

10. Our finding that the petitioner is the person charged in Ohio is limited to a finding that the identity element as set forth in *Moen v. Wilson*, 189 Colo. 85, 536 P.2d 1129, has been satisfied. The petitioner does not challenge the sufficiency of the indictments, nor would such a challenge be successful as the technical sufficiency of an indictment is a question to be addressed by the receiving state. *See Simmons v. Leach*, 626 P.2d 164 (Colo.1981).

of the Agreement had been satisfied by Colorado officials.[11] We agree with the trial court that any issue concerning prompt notification of the filing of the detainer is an issue for resolution by the receiving state under the detainer. *Dodson v. Cooper,* 705 P.2d 500 (Colo.1985); *see Sweaney v. District Court,* 713 P.2d 914 (Colo.1986); *People v. Lincoln,* 42 Colo.App. 512, 601 P.2d 641 (1979).

The judgment of the trial court is affirmed.

---

11. Article III(c) of the Agreement, § 24–60–501, 10 C.R.S. (1982), provides:

The Warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based.